SEYFARTH SHAW LLP
Lorraine H. O'Hara (SBN 170153)
lohara@seyfarth.com
Myra B. Villamor (SBN 232912)
mvillamor@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:  (310) 277-7200
Facsimile:   (310) 201-5219

Attorneys for Defendants
TRIBUNE MEDIA COMPANY and KTLA, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONN CARPER,<br><br>               Plaintiff,<br><br>       v.<br><br>TRIBUNE MEDIA, a business form unknown; KTLA, LLC, a business form unknown; and DOES 1 through 100, inclusive,<br><br>               Defendants. | Case No.  2:15-CV-04259-VAP (SSx)<br><br>*[Hon. Virginia A. Phillips]*<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>*[Filed concurrently with Defendants' Response To Plaintiff's Undisputed Facts, Objections To Plaintiff's Evidence; and Supplemental Declaration of Lorraine H. O'Hara]*<br><br>Date:            June 13, 2016<br>Time:           2:00 P.M.<br>Courtroom:   780 |

# **TABLE OF CONTENTS**

ARGUMENT ..........................................................................................................................1

    A.    Plaintiff's Attempts to Establish a Prima Facie Case of Age Discrimination Are Unavailing ...........................................................................1

    B.    Plaintiff Has Similarly Failed to Establish a Triable Issue of Material Fact on the Issue of Pretext ..................................................................................3

        1.    Plaintiff Was Not Replaced by Schell and Harper ..............................4

        2.    Any Alleged Remarks About Retirement Do Not Create an Issue of Material Fact ...................................................................................5

        3.    Contrary to Plaintiff's Representation, KTLA Produced Extensive Documentation Regarding the Reduced 2015 Budget and the Reduction in Staffing ..........................................................6

        4.    Plaintiff's Job Elimination Was Not a One-Person Reduction in Force .....................................................................................................9

        5.    Plaintiff Has Not Identified Any Policy or Procedure That KTLA Failed to Follow ...............................................................................10

    C.    Plaintiff Has Failed to Present Evidence of Malice, Oppression or Fraud That Would Support His Claim for Punitive Damages...............................10

    D.    No Question of Fact on the After–Acquired Evidence Defense ...................11

CONCLUSION ....................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Addisu v. Fred Meyer*,
  198 F.3d 1130 (9th Cir. 2000) .......................................................................... 4

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 248 (1986) .......................................................................................... 3

*Arpin v. Santa Clara Valley Transp. Agency*,
  261 F.3d 912 (9th Cir. 2001) ............................................................................ 3

*Bellaver v. Quanex Corp.*,
  200 F.3d 485 (7th Cir. 2000) ............................................................................ 9

*Bergene v. Salt River Agric. Improvement & Power Dist.*,
  272 F.3d 1136 (9th Cir. 2001) .......................................................................... 4

*Blakely v. Brach & Brock Confections, Inc.*,
  59 Fed. Appx. 844 (7th Cir. 2003) .................................................................... 9

*Callan v. Amdahl Corporation*,
  1995 WL 261420 (N.D. Cal., Apr. 24, 1995) .................................................... 8

*Chaffin v. Textron, Inc.*
  861 F. Supp. 972 (E.D.Cal. 1994) .................................................................... 8

*Erdmann v. Tranquility, Inc.*,
  155 F. Supp. 2d 1152 (N.D. Cal. 2001) .......................................................... 11

*Filar v. Board of Educ. of City of Chicago*,
  526 F.3d 1054 (7th Cir. 2008) .......................................................................... 9

*Glenn-Davis v. City of Oakland*,
  126 Fed. Appx. 375 (9th Cir. 2005) .................................................................. 9

*Hawn v. Executive Jet Mgmt., Inc.*,
  615 F.3d 1151 (9th Cir. 2010) ...................................................................... 3, 5

*Holtzclaw v. Certainteed Corp.*,
  795 F. Supp. 2d 996 (E.D. Cal. 2011) .............................................................. 6

*Knowles v. Trans Union LLC*,
   2005 WL 3159363 (N.D. Ill., Nov. 21, 2005) ................................................................ 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ...................................................................................................... 3

*McGinest v. GTE Service Corp.*,
   360 F.3d 1103 (9th Cir. 2004) ...................................................................................... 8

*Merrick v. Farmers Ins. Group*
   892 F.2d 1434 (9th Cir. 1990) ...................................................................................... 8

*Rose v. Wells Fargo & Co.*,
   902 F.2d 1417 (9th Cir. 1990) ...................................................................................... 5

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002) ...................................................................................... 4

*Wang v. Sony Pictures Entm't, Inc.*,
   2016 WL 1425726 (C.D. Cal., Mar. 16, 2016) ............................................................. 4

**State Cases**

*Aguilar v. Atlantic Richfield Co.*,
   25 Cal.4th 826 (2001) ................................................................................................... 8

*Bihun v. AT&T Information Systems, Inc.*
   13 Cal. App. 4th 976 (1993) ......................................................................................... 8

*Fisher v. San Pedro Hospital*,
   214 Cal. App. 3d 590 (1989) ...................................................................................... 11

*Guz v. Bechtel Nat'l, Inc.*,
   24 Cal. 4th 317 (2000) .............................................................................................. 1, 4

*Horn v. Cushman & Wakefield Western, Inc.*,
   72 Cal.App.4th 802 (1999) ........................................................................................... 8

*Kupferstein v. Gardena Physicians Hosp., Inc.*,
   2003 WL 21457468 (Cal. Ct. App., June 24, 2003) ................................................... 11

*Lawal v. 501(c) Insurance Programs, Inc.*,
   2007 WL 2751782 (Cal. Ct. App., Sept. 21, 2007) ...................................................... 8

*O'Neil v. Dake*
    169 Cal.App.3d 1038 (1985) ................................................................................ 8

*Sandell v. Taylor-Listug, Inc.*,
    188 Cal. App. 4th 297 (2010) ............................................................................... 1

Plaintiff cannot and does not dispute the actual facts that are material to and relied on by Defendants in support of their motion for summary judgment.[1] Instead, he has filed an opposition to Defendants' Motion for Summary Judgment that is rife with facts that are immaterial, and that is, at best, disingenuous and, at worst, a blatant misrepresentation of the facts and law. A glaring example of Plaintiff's distortion of the record is his assertion that two younger Account Executives ("AEs") were paid a higher base salary than Plaintiff ($140,000 vs. $126,000). This statement is patently false. As discussed in Defendants' Response To Plaintiff's Undisputed Facts (filed concurrently herewith), the record testimony relied on for this assertion clearly states that the $140,000 figure was the compensation target (i.e. the amount they could earn if they achieved 100% of their sales target), not their base salary, and that Plaintiff's own target compensation was $220,000. This is but one example of Plaintiff's misrepresentations. As explained below, there is no evidence that would allow a reasonable jury to find in favor of Plaintiff on his age discrimination and/or public policy claims, and therefore the Defendants are entitled to full summary judgment.

## ARGUMENT

### A. Plaintiff's Attempts to Establish a Prima Facie Case of Age Discrimination Are Unavailing

Plaintiff correctly states that the burden for establishing a *prima facie* case of age discrimination is not intended to be onerous. However, that does not mean that his burden is non-existent. The second element of a *prima facie* case requires that a plaintiff demonstrate that he was performing competently in the job that he held. *Guz v. Bechtel Nat'l, Inc.,* 24 Cal. 4th 317, 355 (2000). In the case principally relied on by Plaintiff, *Sandell v. Taylor-Listug, Inc.,* 188 Cal. App. 4th 297, 322 (2010), the California Court of Appeal observed that "any measurement of such competency should, to the extent

---

[1] Plaintiff admits that Tribune Media Company was not his employer and that summary judgment in favor of Tribune Media is appropriate. (Opposition at 23) Accordingly, Tribune Media does not submit any further argument in support of its dismissal.

1

possible, be based on objective, rather than subjective, criteria." In a sales context, there can be no more objective criteria than actual sales performance or clients demanding that their AE be replaced. It is undisputed that Plaintiff failed to hit his sales goals for three consecutive quarters, and that he was the only AE to do so. (*See* Defs.' SUF 72-73)[2] Further, there is no evidence that any AE, other than Plaintiff, had clients request for them to be replaced on accounts. The evidence is undisputed that multiple clients asked that Plaintiff be replaced on their accounts. (*See* Defs.' SUF 29,[3] 41,[4] 47, 51, 53) In addition, Plaintiff received the lowest rating of any AE on his 2013 year-end performance evaluation, a document which he signed without comment. (Defs.' SUF Nos. 27-28)

The only evidence offered by Plaintiff to rebut this *objective* evidence of his performance deficiencies is (1) the *subjective* opinion of Mike Kincaid, which is utterly lacking in foundation and is immaterial as to whether Plaintiff was performing competently at the time the decision was made to eliminate his position; and (2) the favorable impressions of three clients. (Opposition at 14-15)[5]

Kincaid's opinion testimony is predicated primarily upon Plaintiff's prior industry experience, most of which Kincaid would have had no personal knowledge of. Moreover, Kincaid left KTLA in February 2013 and, therefore, would have had no

---

[2] While Plaintiff purports to dispute these facts, he provides no evidence that any other AE missed their sales goals to the same or greater extent. Instead, he merely proffers an excuse for missing his goals (i.e. that the Living Spaces account was taken away from him). However, he does not, because he cannot, dispute that he was taken off of the Living Spaces account at the client's request. (Defs.' SUF No. 47)

[3] This fact is supported by Plaintiff's deposition testimony where he admits that he was taken off certain accounts at the clients' request. He does not dispute his admissions. Rather, he disingenuously purports to create a dispute by citing deposition testimony regarding an account where the client did not ask for him to be removed.

[4] Although Plaintiff purports to dispute this fact, he cites no evidence.

[5] Plaintiff implies that some adverse inference can be drawn from the fact that Defendants have not deposed Kincaid. (Opposition at 15, n. 5) Not only is there no legal basis for such an inference, but this is an example of Plaintiff's disingenuousness. Plaintiff conveniently fails to mention that Kincaid was never identified as a potential witness until March 30, the same day that his declaration was signed, which was only one day before the discovery cutoff. (Supp. O'Hara Dec. ¶¶ 1-3)

personal knowledge whatsoever regarding Plaintiff's numerous performance deficiencies during the 18 months leading up to decision to eliminate Plaintiff's position.[6]

The three clients' opinions of Plaintiff are similarly subjective and are irrelevant. KTLA has never claimed that all of Plaintiff's clients were dissatisfied with his performance. What is relevant is the fact that multiple clients were so dissatisfied that they did not want to work with him any longer. Thus, the sum total of Plaintiff's evidence that he was performing his job in a competent manner is that a former manager (and long-time acquaintance) and a few clients liked him. This meager evidence is insufficient to satisfy the second element of his *prima facie* case of age discrimination.

### B. Plaintiff Has Similarly Failed to Establish a Triable Issue of Material Fact on the Issue of Pretext

Plaintiff does not dispute that KTLA has articulated a legitimate, non-discriminatory reason for the elimination of his position. Therefore, in order to survive summary judgment, Plaintiff must introduce evidence sufficient to raise a genuine issue of material fact as to whether KTLA's proffered reason for the job elimination was a mere pretext for unlawful age discrimination. As the Ninth Circuit has opined, while a plaintiff's burden at the *prima facie* stage may not be onerous, the burden and analysis at the pretext stage is "rigorous." *Hawn v. Executive Jet Mgmt., Inc.,* 615 F.3d 1151, 1158 (9th Cir. 2010). As Judge O'Connell of this Court recently observed in granting summary judgment in a FEHA discrimination case:

> [T]he non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).… Only genuine disputes over facts that might affect the outcome of the lawsuit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248; *see also Arpin v. Santa Clara*

---

[6] Kincaid also testified that he could only recall one instance during his tenure at KTLA when there was criticism of Plaintiff's performance. He apparently forgot the 2010 performance evaluation with the "needs improvement" rating, and the November 2012 written warning, on which Kincaid is shown as receiving a copy. (Defs.' SUF 20 and 22)

> *Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (holding that the non-moving party must present specific evidence from which a reasonable jury could return a verdict in its favor). A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

*Wang v. Sony Pictures Entm't, Inc.*, 2016 WL 1425726, at *3 (C.D. Cal., Mar. 16, 2016).

Plaintiff admits that he has no direct evidence of age discrimination, so he seeks to rely on purported circumstantial evidence to establish pretext. Under Ninth Circuit law, "[c]ircumstantial evidence of pretext must be specific and substantial in order to survive summary judgment." *Bergene v. Salt River Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001). Plaintiff's evidence is neither and, as a result, he "has not shown that either . . . a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002).

### 1. Plaintiff Was Not Replaced by Schell and Harper

Plaintiff falsely claims that he was replaced by two younger AEs who, perhaps in an effort to confuse the Court, he unaccountably asserts were hired subsequent to his departure. (Opposition at 18, lines 10-12) First, it is undisputed that Claudia Schell and Mark Harper were offered their AE positions in 2013 and started their employment in early 2014, long before the August 2014 decision to reduce the sales force. (Defs.' SUF 70, 98) Second, they were not hired to replace Plaintiff. It is undisputed that they were hired to fill other vacant AE positions. (Defs.' SUF 98) There is not one iota of evidence to suggest that they were hired in anticipation of the elimination of Plaintiff's position.

In essence, Plaintiff seems to be arguing that younger employees were treated more favorably than he was, i.e. they were retained when he was let go. There are two problems with this argument. The law does not require that older employees be given preferential treatment over younger employees. *Guz*, 24 Cal. 4th at 374-75 (age discrimination laws do not require that younger employees be fired in a reduction in

force) (Mosk, J., concurring); *accord Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424-26 (9th Cir. 1990) (affirming summary judgment on age discrimination claim where less senior employees were not selected for layoff). Also, Ms. Schell and Mr. Harper were not similarly situated to Plaintiff. "Individuals are similarly situated when they have similar jobs *and display similar conduct*." *Hawn,* 615 F.3d at 1157 (emphasis added). Unlike Plaintiff, Ms. Schell and Mr. Harper were performing well, and there is no evidence that either of them had to be removed from any accounts because of client complaints. (Declaration of Mary Pouliopoulos ¶¶ 2, 6, included in Defs.' App. of Evid.)

Finally, Plaintiff claims as evidence of pretext the fact that the new employees were given accounts that he had previously serviced at the time they were hired and again after he left – the implication being that they were his "replacements."[7] But as Local Sales Manager Troy Arce Ganier testified in her deposition:

> When Mr. Harper and Ms. Schell joined KTLA in early 2014, we reassigned and redistributed all of the different accounts. We used that as an opportunity to shift agencies for all AEs. So, yes, they - - everyone's list changed.

(Deposition of Troy Arce Ganier ("Ganier Dep.") 182:22-183:1 and errata)[8] Similarly, after Plaintiff left KTLA, his list of accounts was redistributed among all of the AEs, not just to Ms. Schell or Mr. Harper. (Ganier Dep. 181:7-182:10) Thus, nothing in KTLA's treatment of these two AEs supports Plaintiff's claim that they were his replacements or that KTLA's decision to eliminate his position was motivated by his age.

### 2. Any Alleged Remarks About Retirement Do Not Create an Issue of Material Fact

Plaintiff points to two alleged remarks about retirement as evidence of pretext.

---

[7] Plaintiff specifically complains about the transfer of the Living Spaces account. (Opposition at 12) Ironically, that account was transferred because the client complained about Plaintiff and specifically requested that the account be re-assigned to Ms. Schell. (Duarte Dep. 18:16-23:7, 29:23-30:16, 49:12-50:1)

[8] Deposition testimony cited in this Reply is appended to the Supplemental Declaration of Lorraine H. O'Hara ("Supp. O'Hara Dec."), filed concurrently herewith.

The first allegedly was made by Barbara Lopez-Nash at the meeting in which Plaintiff was advised of his job elimination. As noted in Defendants' opening Memorandum of Points and Authorities, this alleged statement, which Ms. Lopez-Nash vehemently denies, was completely unrelated to the decision to eliminate Plaintiff's position. It is undisputed that she was not involved in any manner with the decision, which was made solely by Mr. Corsini and Ms. Pouliopoulos. (Defs.' SUF 69-70, 95) Thus, at best it constitutes a stray remark which is insufficient to demonstrate pretext. *Holtzclaw v. Certainteed Corp.,* 795 F. Supp. 2d 996, 1014 (E.D. Cal. 2011).

The second remark is in an email from Don Corsini in which he expressed his willingness to have a retirement party for Plaintiff when he left KTLA. As Mr. Corsini testified, he made this comment based upon his understanding that Plaintiff was concerned about how his departure from KTLA "would be perceived in the marketplace." (Corsini Dep. 85:10-88:12) Mr. Corsini was merely responding to an inquiry from Plaintiff, and was not suggesting that Plaintiff intended to retire or that Mr. Corsini wanted him to retire. As far as Mr. Corsini knew, Plaintiff was desirous of pursuing employment at KSWB in San Diego, an option Mr. Corsini supported. This comment was unrelated to the decisional process and is not evidence of age-based animus.

### 3. Contrary to Plaintiff's Representation, KTLA Produced Extensive Documentation Regarding the Reduced 2015 Budget and the Reduction in Staffing

Perhaps the most blatant misrepresentation of the record is Plaintiff's assertion that KTLA did not produce any documentation in support of its articulated rationale for Plaintiff's job elimination. (Opposition at 19-20) KTLA produced over 100 pages of financial documents reflecting that 2013 was a very good year (when Ms. Schell and Mr. Harper were offered employment to fill existing AE vacancies); that 2014 was an unexpectedly bad year (in which KTLA did not achieve its revenue and profit goals); and that, as a result of the poor financial performance in 2014, the budget for 2015 would require cost cutting, including reductions in FTE positions in various departments.

The documents produced included the monthly Pacing Reports for 2013 and 2014.

1  These reports summarize the daily Pacing Reports that KTLA managers received every
2  day and enabled them to track in real time whether KTLA was meeting its revenue goals.
3  In addition to the 2013 and 2014 Pacing Reports, KTLA produced the following financial
4  documents (pursuant to a Stipulated Protective Order entered by Magistrate Judge Segal
5  on March 17, 2016 due to the confidential and proprietary nature of their contents):
6  KTLA's 2014 Operating Plan (29 pages); a version of the 2015 Operating Plan as it
7  existed towards the end of 2014 (33 pages), and the final version of the 2015 Operating
8  Plan (33 pages).  (Supp. O'Hara Dec. ¶ 4)
9       Plaintiff took a PMK deposition of  Michael Weiner, the former CFO at KTLA, to
10 glean an understanding of the financial documents produced.  (Deposition of Michael
11 Weiner ("Weiner Dep.") 6:12-7:3)  Mr. Weiner explained that the Pacing Reports show
12 that KTLA missed its revenue goal for Q1 2014 by $2.2 million and missed its Q2 2014
13 revenue goal by another $2.8 million.  (Weiner Dep. 30:6-31:2; 32:13-23; Ex. 5)  Mr.
14 Weiner also testified that a 2015 Operating Plan document showed that by the end of
15 2014, there was a projected revenue deficiency for 2014 of between $5 and $6 million.
16 (Weiner Dep. 25:2-26:10, Ex. 3, p. 3 (redacted); Supp. O'Hara Dec. ¶ 5)  Finally, Mr.
17 Weiner testified that as a result of the 2014 revenue shortfall, a variety of measures,
18 including  job eliminations, would have to be taken for 2015 to reduce expenses and
19 achieve profit goals.  (Weiner Dep. 38:22-39:7, 44:4-8)
20      So what Plaintiff is actually arguing is that there was no *additional* documentation
21 in the form of e-mails, memos or meeting minutes regarding the various cost-cutting
22 efforts to be taken going forward in 2015.  But what Plaintiff cannot dispute is that the
23 need for expense savings and cost cuts were regularly discussed by department heads
24 during their regular meetings.  (Defs.' SUF 66 and 67)  He has not demonstrated why
25 there would be a need for further documentation, beyond what has been produced in
26 discovery, when all the department heads were fully aware of what needed to be done.
27      In any event, the California state courts and federal courts have routinely held that
28 no inference of pretext can be drawn from the absence of documentation regarding an

employee's termination or layoff.

> [T]he lack of documentation cannot be considered affirmative evidence placing defendant's proffered fact in dispute. Plaintiff apparently would have us infer that the complaints were non-existent, based on the absence of documentation. But when "reliance is placed on inferences…those inferences [must] be *reasonably deducible* from evidence…." (*O'Neil v. Dake* (1985) 169 Cal.App.3d 1038, 1044.) In the words of the California Supreme Court, "even though the court may not weigh the plaintiff's evidence or inferences against the defendants as though it were sitting as the trier of fact, it must nevertheless determine what any evidence or inference *could show or imply to a reasonable trier of fact*." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at 856.) Under the circumstances presented on this record, the inference suggested by plaintiff here is not reasonable. (*See, e.g., Chaffin v. Textron, Inc.* (E.D.Cal. 1994) 861 F. Supp. 972, 978 ["court will not infer from lack of documentation that [defendant] is fabricating reasons for [plaintiff's] termination"]; *Merrick v. Farmers Ins. Group* (9th Cir. 1990) 892 F.2d 1434, 1438 [refusing to draw inference that defendant's "reasons for not promoting [plaintiff] lack credibility, because these reasons were not documented until after the commencement of [plaintiff's] suit"]; *Horn v. Cushman & Wakefield Western, Inc.*, *supra*, 72 Cal.App.4th at p. 811 [no inference of pretext in restructuring plaintiff's position; the fact "that the written position description does not change does not mean the employer has not restructured the job"].)

*Lawal v. 501(c) Insurance Programs, Inc.*, 2007 WL 2751782, at *17 (Cal. Ct. App., Sept. 21, 2007); *see also Callan v. Amdahl Corporation*, 1995 WL 261420, at *2 (N.D. Cal., Apr. 24, 1995) ("[A]n employer's failure to document the reason for its employment decision does not constitute evidence of discrimination.")[9]

---

[9] The cases relied on by Plaintiff are plainly inapposite. In *Bihun v. AT&T Information Systems, Inc.,* 13 Cal. App. 4th 976 (1993), the decision involved the suppression of evidence based on the inability of the defendant doctor to produce his original clinical records regarding his treatment of the plaintiff. In *McGinest v. GTE Service Corp.,* 360

8

### 4. Plaintiff's Job Elimination Was Not a One-Person Reduction in Force

Plaintiff once again misrepresents the record evidence when he contends that his job elimination was the result of a one-person RIF. While he may have been the only *non-union* employee whose job was eliminated, Don Corsini and Barbara Lopez-Nash testified that employees in other departments (who happened to be represented by unions) also had their jobs eliminated in 2014. (Corsini Dep. 24:18-20, 25:10-18; Nash Dep. 64:3-6, 66:2-4). Apparently, Plaintiff believes that union employees who lose their jobs are insignificant and irrelevant. In any case, this was not a one-person RIF.[10]

Even if this Court were inclined to consider Plaintiff's job elimination as a "mini-RIF," the Seventh Circuit's decision in *Bellaver v. Quanex Corp.,* 200 F.3d 485 (7th Cir. 2000) does not apply. As the Seventh Circuit has pointed out in subsequent decisions, the *Bellaver* "mini-RIF" paradigm is only used for purposes of satisfying a plaintiff's burden of establishing the fourth element of the *prima facie* case under *McDonnell Douglas,* not for proving pretext. *Filar v. Board of Educ. of City of Chicago*, 526 F.3d 1054, 1060-63 (7th Cir. 2008) (discussing the application of the *Bellaver* mini-RIF *prima facie case*); *Blakely v. Brach & Brock Confections, Inc.*, 59 Fed. Appx. 844, 847 (7th Cir. 2003) (same). And, in order to avail himself of the *Bellaver* analysis *for purposes of making a prima facie showing*, a plaintiff must show that his job duties were absorbed by *similarly situated* persons outside the protected class. *Cf. Knowles v. Trans Union LLC,* 2005 WL 3159363, at *9-10 (N.D. Ill., Nov. 21, 2005) (summary judgment granted to employer; plaintiff did not make *prima facie* case because she failed to show "substantial similarity" between herself and other employees who were retained). Here, Plaintiff not only fails to

---

F.3d 1103 (9th Cir. 2004), and *Glenn-Davis v. City of Oakland,* 126 Fed. Appx. 375 (9th Cir. 2005), the decisions were premised on the fact that there was *no evidence* to support the employers' articulated reasons for the adverse employment actions.

[10] Plaintiff does not dispute that between terminations and decisions not to fill open positions, that KTLA reduced its headcount by ten (10) full-time equivalent positions for 2015. (Defs.' SUF 80)

9

show that the reason articulated by Defendants for his termination was pretext, he cannot make out a *prima facie* case of discrimination because the other AEs were not similarly situated to him -- he had the lowest performance rating and was the only AE who missed sales goals for three consecutive quarters.  (Defs.' SUF 28, 72, 73)

Finally, Plaintiff tries to make a point of the fact that no other AE was considered for the job elimination.  As Mary Pouliopoulos testified, there was no need to consider another AE because Plaintiff was the only AE with whom there were ongoing performance issues and repeated failure to meet his sales goals.  (Defs.' SUF 71)

### 5. Plaintiff Has Not Identified Any Policy or Procedure That KTLA Failed to Follow

Plaintiff's final claim in support of his pretext argument is that KTLA failed to follow some unspecified policy or procedure when it did not give him a copy of a Last and Final Warning that was prepared in November 2013.  This is a red herring.  Plaintiff does not identify what policy or procedure he is relying on.  He simply cites to the Kinkaid declaration which alludes to unspecified policies and procedures.[11]  Plaintiff admits that his supervisor discussed with him the performance issues identified in the warning and that he was removed from the account based upon those performance issues. (Carper Dep. 66:14-16, 67:20-68:22)  This case is not about whether Plaintiff did or did not get a copy of his warning.  The fact that Plaintiff may not have been given a "hard copy" of the document does not somehow magically make the decision to select him for position elimination some nine (9) months later age discrimination.

### C. Plaintiff Has Failed to Present Evidence of Malice, Oppression or Fraud That Would Support His Claim for Punitive Damages

Plaintiff has cited boilerplate case law for the proposition that punitive damages can be awarded by a jury in a FEHA employment discrimination case, but he has failed to

---

[11] KTLA produced to Plaintiff its Employee Handbook.  (Supp. O'Hara Dec. ¶ 6) Plaintiff has not cited any provision therein which KTLA allegedly violated, nor has he identified any policy or procedure relating to RIFs, job eliminations, or the selection of affected employees which he claims were violated by KTLA.

10

identify any evidence in this case that would entitle him to recover punitive damages under the exacting standard for such damages, even if he were to prevail on his underlying claim of age discrimination. The one case he relies on, *Erdmann v. Tranquility, Inc.,* 155 F. Supp. 2d 1152 (N.D. Cal. 2001), involved claims of religious and gender orientation harassment. While some claims involving unlawful harassing conduct may be deemed malicious or onerous, merely showing a statutory violation sufficient to support a cause of action under FEHA or for termination in violation of public policy is not sufficient to show malice or oppression for punitive damages. *Kupferstein v. Gardena Physicians Hosp., Inc.,* 2003 WL 21457468 (Cal. Ct. App., June 24, 2003); *see also Fisher v. San Pedro Hospital,* 214 Cal. App. 3d 590, 620-21 (1989). Rather than showing that KTLA's treatment of Plaintiff was malicious or oppressive, the record demonstrates that he was accorded favorable treatment throughout his employment and, in particular, at the time of his termination. Here, Plaintiff cannot satisfy the higher evidentiary standard required for punitive damages.

**D.    No Question of Fact on the After–Acquired Evidence Defense**

The material facts pertaining to this defense are undisputed. When initially asked by Kevin's Jewelers if they could have less expensive time slots for their advertising, Plaintiff resisted and responded as follows:

> Sorry-we cannot do that process. The client needs to learn about "supply and demand". Our industry runs like an airline. SUPPLY: As seats on the plain diminish the price on the remaining seats go up. That is step #1. Step #2 PRICE: With demand, that goes along with high ratings (and the reason that ratings mean so much to a TV station) is the price for that precious inventory goes up too. We have steadily upped our prices all year long, because of our successful ratings. November and December are prime selling months – holidays! Laura specifically wanted those 6-9 am news areas, as recently they were left off due to pricing. We cannot fiddle internally – especially now where that inventory would appear to be undersold for the value. Sorry. And, those orders are going through the system, so

11

1  If there is a problem, I need a quick alert to drop those out!  DC
2  (Carper Dep. 178:11-179:14, Ex. 28, p. 1)  Mary Pouliopoulos explained in paragraph 5
3  of her declaration that contrary to Plaintiff's resistance in the above e-mail, "[t]he client
4  had the right to move the times for their advertising slots, and to cancel if they wished to
5  do so."  After they asked Plaintiff to process a cancel, $22,000 of advertisements ran that
6  should have been cancelled, and Plaintiff received a commission on the full $22,000.
7  (Defs.' SUF 115-117, 118[12] and 120)  Based upon all of these facts combined, there is no
8  triable issue regarding whether Plaintiff would have been terminated if he had remained
9  employed once it was discovered that he financially benefitted from his resistance to
10 make changes, and then cancel, at a client's request.

## CONCLUSION

Whatever his prior employment history in the television business may have been, at KTLA Donn Carper was an underperforming, oft-criticized Account Executive.  He received multiple poor performance evaluations and disciplinary actions, was removed from multiple accounts due to client complaints, and repeatedly missed his sales targets.  When the time came to cut expenses for 2015, he was the obvious choice for the position elimination.  Even then, KTLA treated him favorably – giving him five months' advance notice to enable him to seek new employment without a loss of income and offering him an opportunity to take a comparable job with comparable earning capability at its sister station.  These are not the actions of an employer acting with a discriminatory motive based on a person's age.  In view of the foregoing, Defendants respectfully request that summary judgment be granted in their favor.

DATED:  May 24, 2016                            SEYFARTH SHAW LLP

                                                By:  /s/ Lorraine H. O'Hara
                                                       Lorraine H. O'Hara
                                                       Attorneys for Defendants

---

[12] Although Plaintiff purports to dispute this fact, his "dispute" is merely a hollow protest because he offers no evidence to dispute that the order was not cancelled, resulting in a $22,000 billing error.